Good morning. My name is Michael Burke and I represent Mr. Kootswatewa and his appeal. I will attempt to reserve two minutes of my time for rebuttal. Mr. Kootswatewa's appeal raises three challenges to his convictions. These are trial-based challenges, two of which concern evidentiary rulings made by the district court and one raises a claim of prosecutorial misconduct during closing argument. With the time allotted and with the court's permission, I would like to address the two evidentiary issues that we raised in our brief, beginning with the issue regarding the prior consistent statement that was admitted during the government's rebuttal case. As the court, as where the defendant in this case was referred to as difficultly testifying and her brief testimony on direct appeal, excuse me, on direct examination revealed that she had been touched by a man who lived in a red house on what was referred to as her ex, which the understanding is that was her genitalia. That was the extent of her direct testimony. Across examination, which was substantially more detailed, PC indicated that her statements regarding being touched by the man in the red house referred to an incident that occurred at her mother's house sometime pre-existing to the incident that is alleged indictment. It occurred on a morning when a man climbed through the window of her mother's house and again touched her on the ex in the inside. The defense counsel had asked PC during the course of cross-examination whether anyone had spoken to her about her testimony, whether anyone at any time had talked to her. She indicated that her mother had talked to her and that the prosecution had talked to her. She indicated she had also spoken with a police officer. Well, this is just a suggestion on cross-examination, which was obviously much more kind of crude and it's people who are told what to say and you're told by these people what you need to do. And so there was a direct attack on her as having had a very reasonable motive to fabricate this whole thing. Indeed, the statements were true, right? They were all true. I don't know if she made a mistake, but they might have introduced her right after the thing happened. First, Your Honor, I would disagree that, yes, there were specific questions about whether she had been prompted to testify as to what to say, whether the defense counsel had been in actual charge of recent fabrication or improper motive. I disagree with that because the testimony that PC was giving was not at all harmful to Mr. Cruz. What was in fact was quite helpful to their defense. What difference does it make what was in the trial counsel's mind? I mean, whether he or she had a specific motive that seems as irrelevant, the jury would have perceived the line of questioning as calling into doubt, right, whether she seems to be truthful in presenting the things that she did in court that day. I don't believe it. The rule speaks of a charge of recent fabrication, but even if the jury would have perceived that Mr. Cruz's counsel's questions were going into that line, the issue, the prior problem with the admission of this evidence is that it was not consistent. It was not a consistent statement. Casey's statement, so also suit Casey Law, the archivist of the incident, this disgusting statement was not consistent. I agree with you. An individual has obvious problems. Doesn't that go to the point? It doesn't go to a possibility, does it? It goes to the way the jury makes their determination based upon the jury's determination indicating her abilities to communicate, et cetera, to the jury. I don't understand what truth there is in it. Are you saying that this testimony is not a comment? Or are you saying that this testimony proves your client is innocent? I don't know where your argument is going. Our argument, Your Honor, is that the case should not have come in because it wasn't hearsay. It was admitted as non-hearsay under Rule 801, D1E, as a prior consistent statement. Yes, I understand that you're not talking about the statements you made to the medical people, et cetera. Not at this point, Your Honor. That is an additional issue I'm happy to address as well. This evidence concerns the testimony in rebuttal. It was the last evidence that the jury heard, which came from a police officer, which was the only evidence the jury ever heard that a man who lived in a rented house would, in this case, in fact, the police officer said, Mr. Theodore, Theodore, that's just me. Now, Your Honor, you mentioned earlier, I was about to ask, you indicated about a lack of consistency. You're not suggesting that these statements have to be exact on the same report? No, Your Honor, not exactly the same. But if you, for example, look at the cases that are cited by the government at their annual brief where they talk about exact consistency is not required, those cases really do make fine points about minor inconsistencies in the testimony prior and in court. Here we have testimony concerning an entirely different event, an event that occurred at the victim's mother's house at a totally different location. It is not a consistent statement. In fact, the only consistency is Casey's statement about what happened to her physically. Now, I agree, Judge Wallace, that Casey has difficulties and has limitations. As the United States Supreme Court noted in its own decision, the court cannot change the rules of evidence based on the individual declarant. The rules of evidence are what they are. And in this case, the evidence was not consistent. In addition, the evidence reportedly wasn't admitted to rebut a charge of recent fabrications. You look at the government's losing argument. They never once talk about it in the defense counsel's questions about this being recently fabricated. The entire focus wasn't. It's not a requirement for invisibility that the prosecution can follow up and close the hearing? It's not a requirement, Your Honor, but it is noted by the Supreme Court in its own decision as a relevant factor. And actually, the district court doesn't have any way of knowing about the prosecution's inability to close the hearing at the time of the invisibility determination. No, but it can be considered for purposes of determining whether it was error to admit it in the first place. Your Honor, that's our argument, that it was error because it really was not offered to rebut a recent, the allegation that she recently was offered for insubstance. It was the only evidence they had as to the substance. And turning to the nurse's testimony, Your Honor, our argument is also that that wasn't properly admitted because there is no indication that Casey made her statements to nurse Clonin. So let me ask you what your position is on that issue. Are you saying that there has to be testimony from Casey herself in which she, at least maybe on her end, about her exact understanding subjectively about what the purpose of the exchange was? No, no, Your Honor. It doesn't have to be from the director himself. Okay. And what is it that was missing from this record that you think was necessary? Well, you have to look at the entire contents. And Casey, maybe she just thought she didn't even remember speaking with nurse Clonin. She didn't remember her at all. And the rule does require that the statement be made for its subjective text. It must be made for medical diagnosis and treatment. There was no indication that Casey's statements existed. Let me put the question back to you. What is missing from this record that you think was necessary to inform us about what Casey's purpose was in extracurricular talking to a nurse? In this particular case, perhaps testimony from Casey herself. Perhaps she said that wasn't required. Well, I'm asking you what would have been. What else was there? Well, you just told me from her mother about the reason her mother took her into this conversation she had with her daughter as to why they were going. But the evidence in this case shows this was a forensic examination that was conducted at the request of the police. Casey's mother was directed to take her for this examination the night before. She was either missing something with this person, a medical individual. She wasn't a doctor. But you said forensic. Is there some conspiracy or charging between the police getting hold of this person who really isn't a doctor and they're paid off on the side? This is much more certain. So they've been very clear that as long as the basic requirement is met, it goes to wait and the jury makes a decision as to where the truth is. Why was this sufficient to get to the jury? Did she ask her how you are, what happened in relationship to this event that took place? Why isn't, what is missing? Your Honor, that evidence from Justice Clinton goes to the second part of Rule 803-4 that it issued after the, it seems my time if I may answer your question, the second part that it is reasonably pertinent to medical diagnosis and treatment. But before that, you must show that the declarant, Casey, made a statement for that purpose. There was never any evidence, which I have checked, and there were never any cases that she asked you to understand and say I made this for this purpose. Or is the circumstance of her going to a doctor when she said there's sufficient evidence to get over that hurdle? It would depend on the context, Your Honor. If a nurse practitioner had a client brought in for, for example, a well examination and it became evident that the child had been abused, that would be a different situation. Here we have a child being brought to a nurse examination. It's a nurse examiner at the direction of, and I must insist that just the process works, but that doesn't necessarily mean that the, that the deliverers were allowed, allowed to rely on Rule 803-4 to get definitive statements in the end. If, if the Court has no further questions, I face my time. Well, we'll give you a minute for a moment. I'm sure you'll be all right. Thank you, Your Honors. Good morning, and may it please the Court, Helen Holland on behalf of the United States. The United States admits that the conviction in this case should be confirmed. The jury rested its unanimous verdict that the defendant is guilty of sexually abusing a young child based on competent, admissible evidence. And I'll take the two evidence challenges in turn in the order that my colleague has addressed them. The first is a prior consistency. As this Court has already noted, the testimony from Officer Locke identified a motive or a fabrication point that the defense attempted through a process of humiliation of the victim and rebutted that misanthropy fabrication. And then there's the consistency point. The consistency point? No, the consistency point. And they are entirely consistent in this regard. During the victim's testimony on the rack, she stated that the defendant had touched her on her back in effect that sexual abuse had occurred. Without reference to time or place, right? That's the problem. And there were signposts during the cross-examination that did identify that the statements were related to the trailer. So, for example, during the cross-examination... Just to remind you, I'm not going to write that on the rack. It was in the very, very close to the rack for unexampled reasons perhaps. But basically, what was elicited from the PC was testimony that something happened to her by the hands of a man in the courthouse. Right. That was basically the incentive. There was no attempt to locate it in evidence that happened in the trailer. Not even an attempt to locate it in evidence, meaning time, right? Correct, Your Honor. Although I will note that there were signposts during the cross-examination that indicated that this was the event that occurred in the trailer. Okay. So, for example, on the cross, the lawyer said, okay, now the testimony that you gave, this one, you know, obviously referring to the rack, let me ask you a question about where that happened, right? And she said, it happened at my mother's house. Well, she said she sort of agreed with everything that the defense attorney asked. So, when she asked, did it happen when you were in eighth grade? They didn't agree. She was currently in eighth grade while she was testifying on the stand, meaning the abuse had occurred on that day. When she asked about the events with the forensic interviewer, she agreed and then didn't agree. And it's evident from the cross-examination that this victim was someone who was going to agree with many things that the cross-examiner would ask. Well, but that's not the critical thing, though. She just agreed, right? When the person tried to get her to say, does it happen once? And she said no. Correct. And I'll just add two points on an evidentiary basis. The United States was more closed from going into prior lives. In 11A, the United States had requested the opportunity to bring out 404B relating to the victim's contacts with the defendant on a prior occasion. The United States was more closed from doing that. As a result, the testimony that the United States listed, and we saw this with Suzanne Clinton as well, had to be limited to the events that occurred in the trailer. Otherwise, we would have not met the 401 standard for relevance at all. So, the victim's testimony was about the events that occurred in the abandoned trailer. And they do want to know that during the cross-examination... Suzanne, I'm sorry. You were going to tell me, and I interrupted you, but let me turn you back. So, how are the statements consistent when the testimony after arrest, right, which is what we have to focus on, is not oriented to temptation at all? And then on cross, she fills in the detail, which is, did it happen at my mother's house, or did it happen prior? She doesn't make a consistent statement. If anyone brings this, does she say it happened somewhere else? I completely disagree with the premise of the cross-examination. It established that the victim's testimony was about an entirely different event. The event that the victim testified was about what occurred in the trailer. During cross-examination, she agreed with lots of things that the cross-examiner had asked. In fact, she said that the abuse had occurred while she was in eighth grade, which means that it occurred right then and there. The events that happened in the home supposedly had occurred one month prior to the events in the abandoned trailer. So, what the victim's responses during cross-examination responded was that she was willing to basically say many things in response to a traumatic discrimination. For consistency purposes, then, do you look at the entire statement of the witness, or do you look at the direct versus the cross-examination, as you referred to? What part of her statement do you look at to see if what's consistent? The direct examination, the United States admits, was about the events that occurred on March 27th of 2014. What the defense has contended is that the cross-examination somehow muddied her testimony so that it was about an entirely different event. We disagree, and there are portions of the cross-examination that do reflect that when the victim was talking about being touched on her ex, that she was talking about the events on March 27th. So, for example, ER 843, the defense attorney asked the victim, now when you describe what happened, did you remember being interviewed by a policeman after something happened to you? And the victim says, by a policeman. And the defense attorney then asks, yeah, by a policeman. Talked to you? Did anyone else talk to you besides the policeman? My mom. So, the events that she described, then, according to the cross-examination and the victim's own testimony, were subsequently followed up by an interview with a policeman. The only event that occurred that was subsequently followed up by an interview with a policeman was the event that occurred in the trailer on March 27th, 2014. What the defense tried to establish on cross-examination was that the victim was confused, that the victim could not recall what happened, where, and how. But the testimony that was elicited did indicate that the defendant had touched her on her ex. On cross-examination, the defendant attempted to suggest that it never helped at all. And, therefore, Officer Locke's testimony that was elicited through just two direct questions was entirely consistent with the testimony that the United States elicited on direct, which is that the defendant had sexually abused her, that he had touched her. So, on both medicates, the United States elicited the United States' testimony that it elicited was both consistent and that it rebutted the charge that the mother had coached the victim and that the prosecutors had coached the victim as well. And can I ask you, what was the nature of the prior contact with the defendant? The 404B requested Walter and Ben, where the victim was found in the defendant's home, in a laundry hamper, and that was excluded, which informs, again, what testimony the United States permitted to elicit from the victim. Turning to the 8034 challenge that sequence to Nurse Clinton, Judge Wallace, to answer the question that you posed to my colleague, the Ninth Circuit held that there is no requirement that there be testimony that the victim directly stated that she understood that her responses were for the purposes of medical diagnosis and treatment. In fact, this Court's precedent indicates that the context in which the statements are provided alone can inform the question of whether the statements were made for the purpose of medical diagnosis and treatment. I direct this Court to, for example, this Court's recent decision in J.E.T., where the Court looked at the context of the conversation and found that the provider's testimony alone about what was conveyed to the victim, as well as the provider's testimony of the purpose of the examination, that that alone was enough to establish the predicate for 8034 purposes. That's precisely the case that we have here. In addition, cases in this Court have blessed medical treatment and diagnosis statements from children as young as three. So, Ignacio was involved as a three-year-old victim. J.D.T. was a six-year-old. Lukashoff, another case he was cited, and Arbrink involved an eight-year-old. The United States admits that in this case, the Court admitted confident 8034 non-hearsay evidence, which is testimony that the victim gave to Nurse Clinton the day after the assault. Let me say this. Even though we may not require testimony from the declarer herself, in the absence of any other subjective thought process, one such witness may need to be interviewed during this stage of the panel session. I assume that your position is that there doesn't need to be a sufficient documentary record from which you can nonetheless infer that it's a subjective matter that I would declare that you did understand that it was for purposes of medical diagnosis or treatment. In this case, that has been added as her honor. So, it is clear from, in those circumstances, and that's clear from this Court's treatment, for example, in GDT, where it was a six-year-old victim who was speaking to a clinical social worker. There, they found that the clinical social worker's testimony about the purpose and what was conveyed to the victim was enough to reflect that the victim likely understood the purpose of the infamination. That's what we have here. Nurse Clinton's testimony established that she, from the get-go, with children, establishes that the purposes of the infamination is for medical treatment and diagnosis. From ER 507, she explained that it's well-established by the time that she asks questions that I'm a health care provider and I'm going to try to help them feel better. That sort of test you need for is what it is that the victim, in this case, Casey, necessarily understood, but she responded to Nurse Clinton's questions and then responded to the examination, underwent the head-to-toe examination, engaged in the subsequent sexually transmitted infection testing, engaged in the behavioral counseling that was recommended. I was surprised to hear that. I did remember that one of our cases involved a three-year-old who was actually sleeping a little bit too young for the inference to be wrong, but then it sounded there, even you, you can see that there is an age below which it would be irrational for any court to infer that the child had been young if they didn't understand what the medical purpose would have to be. I have a two-year-old, and I can say that he understands when he goes to the doctor what the point of the examination is. So for the right line, sort of what age would be too young, I don't know, and it's hard to say, but in this instance we have an 11-year-old. We certainly have a mental faculty of an eight-year-old. In this court's precedence, beyond the three-year-old, we have permitted dozens of statements from six- and eight-year-olds who could shot the QDTP in the example. Unless there are any other questions, United States, you may. Thank you. Thank you. We do have a question. We do have a minute for rebuttal, if you'd like. Very briefly, Dr. Rappaport. I disagree with my colleague's statement that there are slight causes in the record to indicate that the direct examination of K.C. was about the incident in the trailer. The prosecutor asked K.C., has anyone ever touched you on the X? And K.C. responded, yes. There was never more inquiry by the government as to when that accident occurred. So I disagree with the government that you can infer that K.C.'s very little direct testimony was about the incident in the trailer, and that was the incident for which Mr. Kuswatoa was indicted and convicted. And I am suing the government. I'm asking this court to take a greater leap in finding signposts. Thank you. Just do my take and show that testimony. Thank you. Thank you very much. The case is now started and will be submitted.
judges: Wallace, Watford, Sands